**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Case No. 25-CR-31 (BAH)** |
| **ADRIAN THOMPSON** | |

**DEFENDANT'S OPPOSITION TO THE GOVERNMENT'S MOTION TO DISMISS INDICTMENT WITHOUT PREJUDICE AND REQUEST FOR DISMISSAL WITH PREJUDICE**

Adrian Thompson respectfully opposes the Government's Motion to Dismiss Indictment Without Prejudice and requests that this Court dismiss the indictment with prejudice. As this Court explained at the pretrial conference on July 10, 2026, the government failed to diligently prepare for trial, timely disclose *Brady* information, and address the strategic problems presented by an essential witness, about which the government knew since at least September 2025. Those failures are the reason the government sought to continue Mr. Thompson's trial and now seeks to dismiss the indictment without prejudice. This case presents the exact situation that the D.C. Circuit and numerous judges in this district have explained warrants dismissal *with prejudice*—namely, where the government wishes to dismiss without prejudice to bring the case again in a more advantageous circumstance and where its current inability to proceed is squarely due to its own failures. The Court should follow suit and dismiss with prejudice here.

## I. FACTUAL BACKGROUND

Mr. Thompson incorporates the procedural history outlined in his Opposition to the Government's Motion to Continue Trial (ECF 59 at 2–6). In addition, Mr. Thompson states the following:

On July 10, 2026, this Court held a pretrial conference at which it considered, and ultimately denied, the government's Motion to Continue Trial. There, the government conceded that it had not filed any motions *in limine* or pleadings pursuant to Federal Rules of Evidence 404(b) or 609, provided expert disclosures pursuant to Fed. R. Crim. P. 16(a)(1)(G), responded to the defense's repeated discovery requests, or responded to the defense's specific *Brady* requests. *See* July 10, 2026 Hr'g Tr. ("Hr'g Tr.") at 12. The government's lead attorney also made clear that despite this Court's March 17, 2026 scheduling order setting trial for July 20, 2026, he had scheduled trial in May in another matter before a different judge for the same date and had been actively preparing for that trial. *Id.* at 6, 71 ("AUSA Cole . . . has double-booked trials on July 20 . . . . The trial in Judge Mehta's case was set on May 14, 2026, three months after the trial date was set in this case by consent.").

At the hearing, the government also explicitly stated, for the first time, that if its Motion to Continue were denied, it would not be able to proceed to trial and would be dismissing Mr. Thompson's case. *Id.* at 8 ("If you deny our motion today, then—without prejudice, then we would just have an opportunity to dismiss this case from prosecution for July 20."). The government revealed for the first time that

Officer 1 had been "flagged" over a year ago—prior to the September 2025 incident—as someone line prosecutors could not contact without supervisor approval. *Id.* at 50 (AUSA Klug recognizing name of Officer 1 from case "over a year ago where he was a potential witness" and recognizing Officer 1 as "someone that the line AUSAs could not reach out to and we would have to go through a supervisor to contact")). It is unclear if this was simply a mistake of timing, as the defense has not received any *Brady* disclosures about why Officer 1 may have been flagged prior to the information contained in the government's disclosure letter.

The government further revealed—for the first time—that sometime in September 2025, an office-wide email was sent out asking AUSAs to check whether they had cases involving Officer 1. The lead AUSA on this case, who was on the case at that time, did not check the "list of officers in [his] caseload" to see if any involved Officer 1. *Id.* at 21, 22. Nonetheless, the government agreed with the defense's statement that "the U.S. Attorney's Office had a duty to identify which cases Officer 1 was a part of and raise the issue with the relevant AUSAs." *Id.* at 20-21.

The government admitted that despite unearthing the problem with Officer 1 on June 14, 2026, it waited until July to obtain warrants for new buccal swabs from Mr. Thompson and Dempsey. Hr'g Tr. at 14–15 ("We do have warrants."); *id.* at 16 ("[L]ooking at this time frame, under the best of circumstances, the best look for the government here, when AUSA Klug got concerned about the information he was learning about Officer 1 on June 14, you've waited from June 14 when he got

concerned until July 6 to get these warrants for new buccal swabbing. That's under the best of circumstances.").

The lead AUSA on this case also admitted that he did not contact Officer 1 to determine "whether he[ would] be willing to testify in this case." *Id.* at 34. To date, the government had not disclosed any further information regarding Officer 1 beyond the stock disclosure letter and attachments it sent to the defense on June 24, 2026. *Id.* at 25–27. The government still has not disclosed Officer 1's report from his work in this case, although it did disclose some chain of custody discovery in the evening after the pretrial conference. However, the government did not respond to the defense's specific request for Officer 1's report or the report of the officer who swabbed the firearm and magazine for DNA. The defense still does not have those reports.

In denying the government's Motion to Continue, the Court found that the government had failed to argue that a 90-day continuance would serve the ends of justice exception under the Speedy Trial Act. *Id.* at 78 ("The government has utterly failed to address the principal statutory constraint binding this court and the key argument in the defendant's opposition, that is, the Speedy Trial Act."). The Court found that the government was not arguing—and could not argue—that its essential witness, Officer 1, was "unavailable" under 18 U.S.C. § 3161(h)(3). The Court instead agreed with Mr. Thompson that the government was attempting to continue the case for "strategic reasons" to avoid calling Officer 1. *Id.* at 84.

The Court also agreed with Mr. Thompson that 18 U.S.C. § 3161(h)(7)(C) did not provide an ends-of-justice avenue for granting the government's request for a continuance, as the provision prohibits granting a continuance based on a "lack of diligent preparation or failure to obtain available witnesses on the part of the attorney for the Government." *See id.* at 42-43, 79 (stating government's "lack of diligent preparation . . . is an impermissible reason to grant a continuance and exclude time under the Speedy Trial Act"). The Court found that the government knew "since September 2025, that Officer 1 was not a witness the U.S. Attorney's Office wanted to rely on or promote or sponsor as a government witness at trial, and yet the defense in this case wasn't alerted to [this information] until June 24, less than a month before the trial was scheduled to begin, and [the Court] wasn't alerted to it until June 30, even less time before the trial is scheduled to begin." *Id.* at 27.

The Court also concluded that the lead AUSA's "double-booking" problem was "of the government's making." *Id.* at 71. Further, "[h]aving no alternative plan with an AUSA ready to try this case on July 20, the trial date that's been set for months now, is also a problem of the government's making." *Id.* at 73. In the Court's mind, it was "a little bit surprising that it wasn't until June, in response to defense request for discovery, that [the government was] actually collecting the chain of custody evidence to produce in discovery to the defense." *Id.* at 51.

The Court concluded that the government had not diligently prepared for trial at any point in the course of this case, including by failing to reach out to Officer 1 as a potential witness in this case, missing the pre-trial motions deadline,

failing to provide expert disclosures pursuant to Fed. R. Crim. P. 16(a)(1)(G), and failing to respond to repeated discovery and *Brady* requests. Hr'g Tr. at 79 (citing government's "own lack of diligent preparation"); *id.* ("Defense counsel has persuasively argued that [']the government's actions exhibit gross negligence and a complete failure to diligently prepare for trial, not to mention an office-wide failure to alert prosecutors as to defense-favorable witnesses and *Brady* material.[']"). The Court summarized as follows:

> Put bluntly, the government has had many opportunities during the one and a half years since the indictment in this case to realize that what the government calls an essential witness for its DNA evidence—and this case rests heavily on DNA evidence—is not a witness the government wishes to call. And the government has also had all that time to remedy that gap in its evidence by redoing the DNA forensic testing. This is not a situation where the problematic witness just surfaced as a problem, not at all. . . . This is the U.S. Attorney's Office, which certainly had this information. They had this information back in September 2025. [The government] either failed to have systems in place so the line prosecutors in this case were made aware of the problem, or the line prosecutor failed to use the systems in place to uncover the issue on a timely basis in preparing for trial. [Either way, the fault] rests squarely on the government.

*Id.* at 80–81.

As to the implications of the government's request, the Court explained that the government's proposed continuance would undermine the authority of the Court to "'fix and enforce . . . pretrial deadlines,'" which would undermine "the orderly, expeditious, and fair administration of criminal justice in ways difficult to fully imagine." *Id.* at 82 (quoting *U.S. v. Ball*, 2006 WL 8570266 at *2 (D.D.C. Oct. 19, 2006)). The Court also found that Mr. Thompson would suffer significant prejudice, noting that Mr. Thompson was originally arrested in this matter two years ago, has

been under pretrial supervision for over a year, was working two jobs with shifts that lasted at least 15 hours, and commuting some four hours every workday. The Court noted that Mr. Thompson has already been denied at least two jobs because of his active case and electronic monitoring and has been unable to attend numerous milestones for his children. The Court also noted that the defense had scheduled (and prepared for trial) based on the August due date of Mr. Thompson's first child with his wife. *Id.* at 87.

Denying the government's motion, the Court reaffirmed that trial would proceed on July 20, 2026, and continued the pretrial conference to July 14, 2026. On July 13, 2026, the government filed its motion to dismiss without prejudice.

## II. LEGAL STANDARD

Federal Rule of Criminal Procedure 48 states:

> (a) By the Government. The government may, with leave of court, dismiss an indictment, information, or complaint. The government may not dismiss the prosecution during trial without the defendant's consent.
> (b) By the Court. The court may dismiss an indictment, information, or complaint if unnecessary delay occurs in:
> (1) presenting a charge to a grand jury;
> (2) filing an information against a defendant; or
> (3) bringing a defendant to trial.

Fed. R. Crim. P. 48.

Rule 48(a) "allow[s] courts to consider the 'public interest, fair administration of criminal justice and preservation of judicial integrity'" in determining whether to grant a dismissal without prejudice. *United States v. Poindexter*, 719 F. Supp. 6, 10 n. 10 (D.D.C. 1989) (quoting *United States v. Strayer*, 846 F.2d 1262, 1265 (10th Cir.

1988)); *see also United States v. Borges*, 153 F. Supp. 3d 216, 219 (D.D.C. 2015) (same). Rule 48(a)'s requirement of judicial leave expressly assigns the court the responsibility to assess the reasons provided by the government for dismissal. In exercising that responsibility, "[t]he court will not be content with a mere conclusory statement by the prosecutor that dismissal is in the public interest, but will require a statement of reasons and underlying factual basis." *United States v. Ammidown*, 497 F.2d 615, 620 (D.C. Cir. 1973). The essence of the Court's responsibility in determining whether to grant leave is to "guard[] against abuse of prosecutorial discretion." *Id.* "The rule contemplates exposure of the reasons for dismissal 'in order to prevent abuse of the uncontrolled power of dismissal previously enjoyed by prosecutors,' and in pursuance of this purpose 'to gain the Court's favorable discretion, it should be satisfied that the reasons advanced for the proposed dismissal are substantial.'" *Id.*

The Court may thus reject the government's Rule 48(a) motion for dismissal without prejudice and order a dismissal with prejudice. *Poindexter*, 719 F. Supp. at 10; *see also* Mem. Op., *United States v. Gaffney*, 25-cr-282 (SLS) (ECF 26) at 37 (noting Rule 48(b)'s authority to address unwarranted delays in bringing defendant to trial and granting defendant's motion to dismiss with prejudice).[1] Although there

---

[1] As defense counsel mentioned in their response to this Court's July 7, 2026 Minute Order (ECF 64) at 5, this Court also has independent authority under Rule 48(b) to dismiss the indictment due to unnecessary delay outside of the government's motion, for the reasons explained in that filing and *infra*. That authority exists in addition to the Court's authority under Rule 48(a) to deny leave to dismiss without prejudice and order dismissal *with* prejudice, as explained *infra*.

is "a strong presumption in favor of a no-prejudice dismissal, the ultimate decision in that regard depends upon the ***purpose sought to be achieved by the government and its effect on the accused***." *Poindexter*, 719 F. Supp. at 10 (emphasis added). It is the duty of the Court to "'protect a defendant from harassment, through a prosecutor's charging, dismissing without having placed a defendant in jeopardy, and commencing another prosecution at a different time or place deemed more favorable to the prosecution.'" *United States v. Pitts*, 331 F.R.D. 199, 202 (D.D.C. 2019) (quoting *Ammidown*, 497 F.2d at 620). In other words, the Court should consider whether a dismissal without prejudice "would result in harassment of the defendant or would otherwise be contrary to the manifest public interest." *Poindexter*, 719 F. Supp. at 10.

## III. ARGUMENT

### A. Dismissal with Prejudice Is Wholly Justified in This Case, Where the Government Seeks Dismissal in Order to Bring the Case Again in a More Strategically Advantageous Circumstance, and Its Current Inability to Proceed Is Due to Its Own Failures and Procrastination.

This Circuit's precedent squarely compels courts to reject a request for dismissal without prejudice if the reason for the dismissal is "to gain a tactical advantage or if the re-prosecution of the defendant would otherwise be contrary to the manifest public interest." *Pitts*, 331 F.R.D. at 203; *Ammidown*, 497 F.2d at 620 ("leave of court" requirement is intended to protect defendant in situation where government seeks to "commenc[e] another prosecution at a different time or place deemed *more favorable* to the prosecution"). Judges in this district have thus

dismissed cases with prejudice when the government—as here—strategically decides to seek dismissal without prejudice to bring the case again under "more advantageous circumstances." *United States v. Borges*, 153 F. Supp. 3d 216, 220 (D.D.C. 2015). This Court should do the same.

In *Borges*, for example, Judge Leon dismissed with prejudice when the government's sole reason for seeking dismissal without prejudice was to avoid a problem with a key witness that the government had hoped would be cured at some later date. In declining the government's request to dismiss the case without prejudice, the court stated that it had an "obligation to protect these defendants from the uncertainty that the risk of a future prosecution entails because it amounts, objectively, to harassment." *Id.* at 221. Likewise, in *Pitts*, a case before Judge Sullivan, the government "moved to dismiss the indictment without prejudice because of a defect in its case that has occurred through no fault of the defendant." 331 F.R.D. at 204. The court found that the government was moving to dismiss in order to prosecute the defendant at a later, more strategically favorable time, and therefore dismissed with prejudice. *Id.*

The facts in *Pitts* closely resemble this case, and the reasoning in that case applies here. In *Pitts*, "the government failed to test DNA swabs despite having possession of that evidence [for five months] and despite receiving requests from the defendant for that evidence." *Id.* The court found that the "'lack of diligent preparation'" by the government prevented the court from excluding time under the Speedy Trial Act to give the government more time to "obtain the test results" (as

DNA testing there, as here, would not be complete until after the expiration of the Speedy Trial date). *Id.* (quoting 18 U.S.C. § 3161(h)(7)(C)). The court explained that the government's "dissatisf[action] with the state of its case" was the result of its *own failures* to timely remedy the state of its DNA evidence "through no fault of the defendant," and that the government's motion to dismiss without prejudice was made only to "salvage the prosecution once the DNA test results are received." *Id.* (emphasis added).

In denying that motion, and instead dismissing *with* prejudice, the court in *Pitts* explained as follows:

> [D]ismissing a case without prejudice only to bring charges when the case is in a better posture for the government is precisely the type of strategic use of Rule 48 that the D.C. Circuit has proscribed . . . Accordingly, the sole reason for the government's motion is that it has no basis to seek a continuance so that it can obtain the DNA test results that it failed to timely request. [T]his is indeed the "case in which the government could proceed to trial yet, for tactical reasons, has sought to defer prosecution." Under these circumstances, the Court concludes that the government seeks to dismiss this case simply because it prefers to prosecute the defendant "at a different time . . . deemed more favorable to the prosecution." *Ammidown*, 497 F.2d at 620. The fair administration of justice does not countenance the use of such ploys.

*Id.*

The consistent throughline in these cases is that "[t]he Government cannot use dismissal to 'gain a position of advantage, or to escape from a position of less advantage in which it found itself as a result of its *own election*.'" *Madzarac*, 678 F. Supp. 3d at 46–47 (quoting *Poindexter*, 719 F. Supp. at 10) (emphasis added). Here, as the Court explained at length in its denial of the government's motion to continue, the government knew—or at least should have known—of the infirmities

of its case since September 2025, but failed to timely disclose defense-favorable information and failed to diligently prepare for trial, disregarding numerous deadlines imposed by the Court and numerous requests by the defendant for discovery. If the government had properly informed its attorneys of the problems related to Officer 1 in September (or proactively determined which cases were affected), if the individual AUSAs on this case had diligently prepared for trial at any point, and if the government had timely responded to the defense's *thrice repeated* discovery requests when those were first sent in early May, the AUSAs in this case would have been able to timely re-swab Mr. Thompson and Mr. Dempsey, analyze those results, obtain the underlying reports, disclose that evidence to the defense, and present their witness at trial. *See* Hr'g Tr. at 80 (noting that "government has had many opportunities during the one and a half years since the indictment in this case to realize that what the government calls an essential witness for its DNA evidence . . . is not a witness the government wishes to call. And the government has also had all that time to remedy that gap in its evidence by redoing the DNA forensic testing")."

As it stands, however, the government missed the February pre-trial motions deadline; entirely failed to file motions in limine, expert disclosures, and Rule 609 and Rule 404 pleadings at any point; and failed to respond to the defense's discovery and *Brady* requests. And the government continued to push on with its prosecution of Mr. Thompson despite knowing of Officer 1's problems and that its prosecution of Mr. Thompson could not proceed to trial without remedying the buccal swab issue.

Indeed, at the July 10, 2026 pretrial conference, the government revealed for the first time that Officer 1 had been flagged as problematic even *prior to* September 2025—a fact absent from the stock disclosure letter the government provided to the defense on June 24, 2026.[2] The government likewise offered no explanation—other than a lack of due diligence—for the month between AUSA Klug's discovery of Officer 1 and when they sought an arrest warrant, why the AUSAs in this case did not previously look through the *Lewis* list[3] to see if any officers had problems, why AUSAs here failed at any point to follow the internal September 2025 directive to see if Officer 1 was involved in this case, and why the U.S. Attorney's Office took no preemptive steps to identify affected cases beyond sending a single internal email.

These failures have planted the government in the hole it sought to dig itself out of first through its Motion to Continue and through a dismissal without prejudice. Both vehicles were aimed at allowing the government to try Mr. Thompson at a more strategically advantageous time. *See* Hr'g Tr. at 84 (court noting that government did not want to call Officer 1 for "strategic reasons" that the Speedy Trial Act did not sanction as a basis for a continuance). But just as the Speedy Trial Act does not permit a continuance on this basis to allow the government to strategically escape a deficiency of its own making (i.e., a lack of due diligence), Rule 48(a) does not allow the government a re-do in the same situation,

[2] Again, this may have been a misstatement by AUSA Klug.
[3] Indeed, the government stopped short of stating that Officer 1 was on the *Lewis* list. *See* Hr'g Tr. at 49. Thus, it is not even clear whether the government checked to see if any of its witnesses were on that list—another failure of the government's negligent trial preparation.

and it is the Court's role to guard against such gamesmanship. *See United States v. Ramirez*, 973 F.2d 36, 39 (1st Cir. 1992) ("When a Speedy Trial Act violation is caused by the court or the prosecutor, it weighs in favor of granting a dismissal with prejudice."); *United States v. Caparella*, 716 F.2d 976, 980 (2d Cir. 1983) (finding that dismissal with prejudice was warranted when Speedy Trial Act violation was due to "prosecutor's negligence"). Indeed, should the Court grant the government's motion to dismiss without prejudice after denying the government's Motion to Continue, the government would effectively receive no sanction for what the Court recognized as grossly dilatory and negligent behavior—ultimately getting its wish to retry Mr. Thompson at a later date with its professed witness problems cleaned up. In fact, the government could obtain an "out" from the Speedy Trial Act's constraints in any such future circumstance by simply moving to dismiss without prejudice where it is unable to obtain a continuance.

**B. Dismissal Without Prejudice Would Result in Harassment of Mr. Thompson, Which Warrants Dismissal with Prejudice.**

A dismissal with prejudice is warranted to avoid the objective harassment of Mr. Thompson that would necessarily follow from a dismissal without prejudice. "[C]ourts have interpreted Rule 48(a)'s leave-of-court requirement as imbuing them with a responsibility to protect a defendant against prosecutorial harassment, e.g., charging, dismissing, and recharging." *Rinaldi v. United States*, 434 U.S. 22, 29 n.15 (1977); *see also Ammidown*, 497 F.2d at 620 (same). Thus, if "a court finds that dismissal without prejudice would result in harassment of the defendant, Rule 48(a)

accordingly empowers the court to dismiss with prejudice instead." *United States v. Poindexter*, 719 F. Supp. 6, 10 (D.D.C. 1989)."

Dismissing this case without prejudice would expressly allow the government to reindict this case, which would amount to Mr. Thompson's ***third*** arrest and the ***third*** time being hauled into court for the same conduct. That amounts, objectively, to harassment—and harassment that results from the government's desire to situate itself in a more advantageous circumstance to avoid the consequences of its own organizational failures, procrastination, and negligence. *See United States v. Beidleman*, 806 F. Supp. 3d 11, 16 (D.D.C. 2025) ("a dismissal without prejudice would place [Mr. Thompson] under threat that at any time the Government might dismiss its charges against him . . . and restart his prosecution 'for a third time'") (quoting *Pitts*, 331 F.R.D. at 205); *Pitts*, 331 F.R.D. at 206 ("By requesting a third bite at the prosecutorial apple, with the hope that it will have a better case at a later date," the government seeks "exactly" to "harass" the defendant by "commencing another prosecution at a different time or place deemed more favorable to the prosecution") (quoting *Ammidown*, 497 F.2d at 620).

As Judge Lamberth indicated in *United States v. Madzarac*, 678 F. Supp. 3d 42, 49 (D.D.C. 2023), "[t]o understand whether a defendant is being harassed, a court must consider not only how the defendant is affected, but why the defendant is affected." *Id.* Thus, as Judge Lamberth explained, there is a difference between "a situation where the government asks to dismiss based on developing circumstances or legal theories" and a situation "involving the forbidden governmental purpose of

'escap[ing] from a position of less advantage in which [the government] found itself as a result of its own election'" *Id.* (comparing hypothetical where a "key witness . . . flees the country" versus a situation where government knew in advance that the witness would be "unavailable" and attempted to dismiss without prejudice to "preserve the possibility of recovering the witness in the future"). The former situation may allow for a dismissal without prejudice, but the latter demands dismissal *with* prejudice, even where the court may think that the government was not acting in bad faith. *Id.*[4]

Here, the situation falls squarely in the latter camp. The government was put on explicit notice of problems with Officer 1 in September of 2025 and, based on the

[4] Arguably, the government is seeking dismissal without prejudice in bad faith here, as bad faith can be shown where "the record affirmatively suggests that the government sought the dismissal in order to achieve a tactical advantage in derogation of the defendant's rights or for the purpose of harassment." *United States v. B. G. G.*, 53 F.4th 1353, 1362 (11th Cir. 2022) (cleaned up). But Mr. Thompson need not show bad faith to warrant a dismissal with prejudice. In *Madzarac*, the court found that the government had acted in good faith, and agreed that the defendant's alleged conduct was serious and potentially worthy of prosecution, but found that "having had the time to fully investigate and consider the offense, the government offered [the] a deferred prosecution agreement without any incarceration," which "cut[] against the presumption that the public interest would be served by a dismissal without prejudice." 678 F. Supp. 3d at 52. Here, too, the government has offered little- and no-incarceration plea offers and touted at the pretrial conference that it had not opposed reducing Mr. Thompson's pretrial conditions and would agree with removing those conditions. *See* Hr'g Tr. at 69 ("if you conclude that the defendant is on pretrial release and there are some conditions that he is on that might be onerous to him, then I would not object to removing those conditions of pretrial release but keeping and granting the government's motion to continue"). As in *Madzarac*, the government's own proffers undermine any notion "that the public interest would be served by a dismissal without prejudice," and for the other reasons stated in that case and *supra*, dismissal with prejudice is justified. 678 F. Supp. 3d at 52.

account of AUSA Klug, have had him flagged for *over a year* as someone line prosecutors could not contact without supervisor approval. Nevertheless, they pursued this case against Mr. Thompson for nine months after the September 2025 notice (even opposing the defense's motion to continue in January based on the suggestion that it was preparing for an overdue trial) and utterly failed to remedy preparing for trial throughout this period. Where "the operative question is whether dismissal without prejudice would lead to the government 'commencing another prosecution at a different time or place deemed more favorable to the prosecution,'" such a result is "undoubtably present here." *Id.* at 51. Thus, "because the purpose and effect of a dismissal without prejudice is so squarely within the core of the objective harassment test under Rule 48(a), this Court [should conclude that] the public interest would be best served by a dismissal with prejudice." *Id.* at 52.

"The Court [should] draw[] the line at two bites at the apple." *United States v. Nguyen*, No. MAG 25-148, 2025 WL 3073702, at *4 (D.D.C. Nov. 4, 2025) (dismissing case with prejudice); *cf. United States v. Brandon Lee*, No. 19-cr-140 (TJK), Min. Order (12/18/2019) (quoting *United States v. Florian*, 765 F. Supp. 2d 32, 35 (D.D.C. 2011)) (government failed to meet burden to demonstrate dismissal without prejudice would be in the public interest).

## IV. CONCLUSION

For the foregoing reasons, the Court should dismiss the complaint *with prejudice.*

Respectfully submitted,

A. J. KRAMER
FEDERAL PUBLIC DEFENDER

/s/
______________________________
ISRA BHATTY
BENJAMIN SCHIFFELBEIN
Assistant Federal Public Defenders
625 Indiana Avenue, N.W., Suite 550
Washington, D.C. 20004
(202) 208-7500