**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **No. 25-cr-31 (BAH)** |
| | : | |
| **ADRIAN THOMPSON,** | : | |
| | : | |
| **Defendant** | : | |

**GOVERNMENT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS INDICTMENT WITHOUT PREJUDICE**

Pursuant to Federal Rule of Criminal Procedure 48(a), the United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum of law in support of its motion to dismiss without prejudice. In short, dismissal without prejudice is appropriate because there is no scheme to repeatedly bring and dismiss charges without adjudication, and potential re-prosecution is consistent with the public interest and fundamental fairness.

## BACKGROUND

On January 28, 2025, a grand jury in the U.S. District Court for the District of Columbia returned a one count indictment charging Adrian Thompson ("Thompson" or the "Defendant") with a violation of 18 U.S.C. § 922(g)(1) (Possession of a Firearm and Ammunition by a Person Convicted of an Offense Punishable by a Term of Imprisonment Exceeding One Year). ECF No. 1. Thompson was arrested on June 3, 2025, and released with conditions. *See* Min. Order (June 3, 2025); Order Setting Conditions of Release, ECF No. 11.

After Thompson's arrest in this matter, his buccal swabs, along with those of the owner of the involved vehicle, Dion Dempsey ("Dempsey"), were collected, transferred to the FBI, and submitted into FBI evidence. The firearm and magazine were also swabbed for DNA, and those

swabs were also transferred to the FBI and submitted into FBI evidence. The DNA evidence was submitted to the FBI Laboratory for testing. On August 8, 2024, the FBI laboratory issued a report providing "very strong support" for the inclusion of Thompson's DNA in the DNA mixture obtained from the magazine and excluding Dempsey as a potential contributor to the DNA obtained from the magazine.

On approximately June 14, 2026, while preparing for trial, counsel for the United States learned that an officer herein referred to as "Officer 1" had collected the buccal swabs of both Thompson and Dempsey, which were used in the DNA testing. As a result of a series of incidents in a different case involving Officer 1, which are described in the Government's Opposed Motion to Continue Trial, ECF No. 51 at 2–3, the United States is unable to sponsor Officer 1 as a witness at trial. By the time the United States discovered Officer 1's involvement in obtaining the buccal swabs, it was too late to obtain new buccal swabs and complete new DNA testing before the trial, which was then set for July 20, 2026. [1]

As a result, Officer 1's involvement in what is typically a merely ministerial task threatened to undercut an orderly presentation of the evidence at trial. This Court denied the United States' motion to continue trial, *see* July 10, 2026 Minute Entry, and the United States then moved to dismiss this case without prejudice in order to redo buccal swabs and DNA testing and then potentially re-prosecute this case. *See* Motion to Dismiss, ECF No. 67.

[1] In its motion, counsel for the defendant wrote, "The government still has not disclosed Officer 1's report from his work in this case, although it did disclose some chain of custody discovery in the evening after the pretrial conference." Def. Mot. ECF No. 70 at 4. After a careful review, undersigned counsel for the government is not aware of any outstanding reports prepared by Officer 1. The government previously requested and disclosed to counsel for the defendant the full DFS discovery file and other property and/or evidence reports related to this case.

## ARGUMENT

Federal Rule of Criminal Procedure 48(a) provides that, at any time prior to trial, "[t]he government may, with leave of the court, dismiss an indictment." Fed. R. Crim. P. 48(a). Rule 48(a) is intended to allow courts to consider the "public interest, fair administration of criminal justice and preservation of judicial integrity." *United States v. Strayer*, 846 F.2d 1262, 1265 (10th Cir. 1988). "The principal object of the 'leave of court' requirement is apparently to protect a defendant against prosecutorial harassment, e.g., charging, dismissing, and recharging, when the Government moves to dismiss an indictment over the defendant's objection." *Rinaldi v. United States*, 434 U.S. 22, 29 n.15 (1977).

Under Rule 48, there is a strong presumption in favor of a no-prejudice dismissal. *See United States v. Poindexter*, 719 F. Supp. 6, 10 (D.D.C. 1989). Only in exceptional circumstances should a court reject the government's request to dismiss an indictment without prejudice. *Id.* (noting that "[w]hile a court is still not free to substitute its judgment for that of the prosecutor, whose decision is deemed valid, [Rule 48(a)] has the effect of granting authority to the court in exceptional circumstances to reject a dismissal without prejudice . . . if this would result in harassment of the defendant or would otherwise be contrary to the manifest public interest."). Indeed, absent evidence that the government was acting in bad faith or for reasons that are clearly contrary to the public interest, the government's motion for leave to dismiss a case should be granted. *United States v. Karake*, No. CRIM.A. 02-00256 ESH, 2007 WL 8045732 at *1 (D.D.C. Feb. 7, 2007) (citing *Rinaldi*, 434 U.S. at 29–30). Where, as here, the dismissal does not arise from a constitutional violation, dismissal is normally without prejudice. *United States v. Simmons*, 536 F.2d 827, 833 (9th Cir. 1976). Moreover, a dismissal with prejudice may "override

the . . . public interest in the enforcement of the criminal law." *United States v. Goodson*, 204 F.3d 508, 514 (4th Cir. 2000).

**1. Absent a Scheme to Repeatedly Bring and Dismiss Charges Without Adjudication, Non-prejudicial Dismissal Is Appropriate**

The defense urges this Court to adopt an expansive view of Rule 48(a) that would preclude non-prejudicial dismissal whenever the Government aimed to re-bring a case under more favorable circumstances. *See, e.g.,* Defendant's Opposition to the Government's Motion to Dismiss Indictment Without Prejudice and Request for Dismissal with Prejudice ("Def Mot."), ECF No. 70 at 9–10 ("Judges in this district have thus dismissed cases with prejudice when the government—as here—strategically decides to seek dismissal without prejudice to bring the case again under 'more advantageous circumstances.'") (quoting *United States v. Borges*, 153 F. Supp. 3d 216, 220 (D.D.C. 2015)). In support of this unduly expansive view, the defense relies on the D.C. Circuit's decision in *United States v. Ammidown*, which, in *dicta*, declared that the "primary concern" of Rule 48(a)'s drafters was "protecting a defendant from harassment through a prosecutor's charging, dismissing without having placed a defendant in jeopardy, *and commencing another prosecution at a different time or place deemed more favorable to the prosecution*." 497 F.2d 615, 620 (D.C. Cir. 1974) (emphasis added).

Since *Ammidown* was decided, however, both the Supreme Court in *Rinaldi* and the D.C. Circuit in *United States v. Fokker Services B.V.*, 818 F.3d 733, 742 (D.C. Cir. 2016), have defined the scope of a court's authority under Rule 48(a) more narrowly than *Ammidown*'s expansive more-favorable-to-the-government language. Instead, those courts have opined that Rule 48(a)'s purpose is to protect a defendant against prosecutorial *harassment* – not prosecutorial advantage *per se*. *See Rinaldi*, 434 U.S. at 29 n.15 (leave of court requirement serves to protect a defendant against prosecutorial harassment and permits a court to deny a dismissal motion prompted by

considerations clearly contrary to the public interest); *Fokker Services B.V.*, 818 F.3d at 742 ("the Supreme Court has declined to construe Rule 48(a)'s 'leave of court' requirement to confer any substantial role for courts in the determination whether to dismiss charges. Rather, the 'principal object of the 'leave of court' requirement' has been understood to be a narrow one—'to protect a defendant against prosecutorial harassment . . . when the [g]overnment moves to dismiss an indictment over the defendant's objection.'") (quoting *Rinaldi* 434 U.S. at 29 n.15).

Moreover, as the D.C. Court of Appeals recently concluded after canvassing numerous federal circuit Rule 48 authorities in *Workman v. United States*, 255 A.3d 971 (D.C. 2021), a "rule that the government engages in impermissible harassment any time it dismisses an indictment in the hope of later reindicting the defendant under more favorable circumstances" is "both unwarranted and contrary to the weight of authority." 255 A.3d at 975–76 (citing *United States v. Jones*, 664 F.3d 966, 973 (5th Cir. 2011); *United States v. Goodson*, 204 F.3d 508, 512–16 (4th Cir. 2000); *United States v. Hayden*, 860 F.2d 1483, 1488 (9th Cir. 1988); *United States v. Feldhacker*, 849 F.2d 293, 295 (8th Cir. 1988); and *Strayer*, 846 F.2d at 1264–66); *see also United States v. Florian*, 765 F. Supp. 2d 32, 36 (D.D.C. 2011) ("The mere fact that a dismissal without prejudice leaves the door open to hypothetical future prosecution in this jurisdiction is not tantamount to prosecutorial harassment; were that the case, it is difficult to imagine when dismissal without prejudice would ever be appropriate."). The *Workman* court then went on to define the limits on the government's dismissal power much more narrowly than the standard suggested by the defense here. *See Workman* 255 A.3d at 971 ("[T]he principal purpose of the leave of court requirement of Fed. R. Crim. P. 48(a) is to protect a defendant from the government's harassing him by *repeatedly* filing charges and then dismissing them before they are adjudicated") (quoting *Ferrell v. United States*, 990 A.2d 1015, 1020 n.4 (D.C. 2010))

(emphasis in original). Unlike the defense's expansive view, the *Workman* framework is consistent with the D.C. Circuit's narrower view expressed in *Fokker Services B.V.*, which focuses the 48(a) inquiry on "the prospect that dismissal is part of a scheme of 'prosecutorial harassment' of the defendant through repeated efforts to bring—and then dismiss—charges." 818 F.3d at 742 (citing *Rinaldi*, 434 U.S. at 29 n.15.).

**2. *Borges and Pitts Apply an Unduly Expansive View of Rule 48(b) and are Factually Distinguishable from this Case***

Notwithstanding the appropriately narrow framework articulated in *Rinaldi*, *Fokker Services B.V.*, and *Workman*, the defense primarily relies on two District Court cases: *Borges*, 153 F. Supp. at 220, and *United States v. Pitts*, 331 F.R.D. 199 (D.D.C. 2019). *See* Def. Mot. at 9–11. As an initial matter, both of those cases explicitly rely on *Ammidown*'s more-favorable-to-the-government *dicta* without addressing the subsequent and more narrow articulation of Rule 48(a)'s leave of court requirement in *Rinaldi* and *Fokker Services B.V.* *See Borges*, 153 F. Supp. at 219; *Pitts*, 331 F.R.D. at 202–04.

Moreover, the facts in *Borges* and *Pitts* were materially different from the facts here. As in this case, *Borges* involved an officer who the government later learned was involved in problematic conduct unrelated to the case at hand. 153 F. Supp. at 218. But unlike this case, the government in *Borges* was unable to offer a definitive path to cure the case's defect. Instead, the government could only put forward "the possibility that the problems with Agent Lowry's involvement in the case may be cured at a later date when its investigation is more complete." *Id*. at 220. The district court therefore emphasized that it had "an obligation to protect these defendants from the uncertainty that the risk of a future prosecution entails." *Id*. Here, unlike in *Borges*, the Government has offered a path forward that is not speculative or undetermined. The government has already obtained a new buccal swab from the Defendant, and DNA testing and

the related discovery production is expected to be completed in approximately 90 days. Once the new testing is complete, this case can proceed to adjudication.

Likewise, *Pitts* presented different circumstances than the facts here. In *Pitts*, the government obtained an indictment without having first conducted DNA testing and then later sought to dismiss the case without prejudice because it had failed to complete DNA testing before trial. *See* 331 F.R.D. at 204. Unlike *Pitts*, this case does not present a situation where the government obtained an indictment and only then, post-indictment, considered forensic testing. Here, when the Grand Jury returned the Indictment in January 2025, the September incident involving Officer 1 had not yet occurred, and the United States had every reason to think that it would be able to present inculpatory DNA evidence to a jury at trial. In June 2026, when counsel for the United States learned of Officer 1's involvement in this case and recognized that the United States could not sponsor Officer 1's testimony, it then became clear that the United States would not be able to rely at trial on the same evidence the government had in its possession when it sought an indictment in the first place.

### 3. *Absent Evidence that the Government Is Seeking to Dismiss an Indictment in Bad Faith or for Reasons Clearly Contrary to the Public Interest, a Motion for Leave to Dismiss Without Prejudice Should be Granted.*

Unlike the more-favorable-to-the-government standard that *Workman* correctly characterized as "both unwarranted and contrary to the weight of authority," 255 A.3d at 975-76, the appropriate standard for this Court to consider is whether "a dismissal without prejudice— which would allow re-prosecution— . . . would result in harassment of the defendant or would otherwise be contrary to the manifest public interest." *Poindexter*, 719 F. Supp. at 10 (citing *Strayer*, 846 F.2d at 1265; *see also Karake*, 2007 WL 8045732, at *1 ("Absent evidence that the government is seeking to dismiss an indictment in bad faith or for reasons clearly contrary to the

public interest, a motion for leave to dismiss should be granted.") (*citing Rinaldi*, 434 U.S. at 29–30, and *Ammidown*, 497 F.2d at 622).

In *Karake*, the District Court provided three factors that a trial court should evaluate to determine whether dismissal with prejudice is warranted: (1) whether allowing re-prosecution "would result in harassment of the defendant or would otherwise be contrary to the manifest public interest," 2007 WL 8045732, at *1 (citing *Poindexter*, 719 F. Supp at 10); (2) whether "dismissal without prejudice would condone disregard for the Federal Rules of Criminal Procedure," *id*. at *2; and (3) whether re-prosecution would "go against the concept of fundamental fairness," *id*. at *3. Consideration of each of these three factors strongly supports the government's motion for dismissal without prejudice.

Here, re-prosecution of the Defendant will neither result in harassment nor be contrary to the public interest. First, the mere prospect of re-prosecution does not amount to harassment. *See Florian*, 765 F. Supp. 2d at 36 ("The mere fact that a dismissal without prejudice leaves the door open to hypothetical future prosecution in this jurisdiction is not tantamount to prosecutorial harassment; were that the case, it is difficult to imagine when dismissal without prejudice would ever be appropriate."). Concerns regarding harassment arise where the government deliberately engages in a scheme to repeatedly file and then dismiss charges without ever having the charges adjudicated. *Workman*, 255 A.3d at 971 (harassment occurs where government repeatedly files charges and then dismisses "before they are adjudicated"); *see also Fokker Services B.V.*, 818 F.3d at 742 (scheme of prosecutorial harassment arises from repeated efforts to bring and then dismiss charges). Here, the United States fully intends to seek adjudication of this case, and soon. There is no scheme to perpetually keep the Defendant under indictment or threat of indictment; rather, once new DNA testing is obtained in relatively short order, the United States intends to

resume its efforts to have the case promptly resolved. During the relatively short interim of (at most) a few months while the Government obtains new DNA evidence, the Defendant will not be under indictment or any conditions of release (aside from conditions imposed in his separate case in Maryland). Yet the Defendant seeks an unwarranted and severe remedy—dismissal with prejudice—which would result in this case never being adjudicated. That remedy is contrary to the public interest in having criminal cases adjudicated on the merits. *Goodson*, 204 F.3d at 514 ("[I]n dismissing an indictment with prejudice, the court allows its interest in the orderly administration of justice to override the interests of victims and the public interest in the enforcement of the criminal law.").

Likewise, dismissal without prejudice will not condone disregard for the Federal Rules of Criminal Procedure. Here, there is no dispute that the United States has complied with Rule 48(a), *cf. United States v. James*, 861 F. Supp. 151 (D.D.C. 1994) (case dismissed with prejudice for Speedy Trial Act Violation after the government filed a dismissal with the clerk instead of moving for leave to dismiss the indictment pursuant to Fed. R. Crim. P. 48(a)), and the defense points to no other Federal Rule of Criminal Procedure that would be undermined by dismissal without prejudice.

Instead, even though the defense makes no allegation that the United States failed to comply with the Rule 48(a) dismissal procedure, the defense asserts that the government's motion to dismiss amounts to an improper workaround of the Speedy Trial Act. *See* Def. Mot. at 13–14. As the defense puts it, the government is seeking "an 'out' from the Speedy Trial Act's constraints . . . ." *Id*. at 14. But dismissal and re-prosecution under Rule 48(a) is not an "out" from the Speedy Trial Act. On the contrary, the Speedy Trial Act explicitly addresses how time computations are affected by dismissal and re-prosecution. 18 U.S.C. § 3161(h)(5) (excluding from Speedy Trial

Act calculations periods of time after charges are dismissed; "[i]f the information or indictment is dismissed upon motion of the attorney for the Government and thereafter a charge is filed against the defendant for the same offense . . . any period of delay from the date the charge was dismissed to the date the time limitation would commence to run as to the subsequent charge had there been no previous charge."); *see also United States v. Barraza-Lopez*, 659 F.3d 1216, 1220 n.5 (9th Cir. 2011) ("When an indictment is dismissed on the government's motion, not the defendant's, and the defendant is later recharged, the Speedy Trial Act's time limits are tolled for the period between dismissal and refiling, rather than being reset."); *United States v. Myers*, 666 F.3d 402, 406 (6th Cir. 2012) ("When the government asks the court to dismiss an indictment, the 70–day clock is tolled, not reset, if the government files the same charges again."). In short, the Speedy Trial Act expressly *permits* prosecutions to be dismissed and refiled.

The defense unsurprisingly offers no support for its suggestion that the government's dismissal would be an improper workaround of the Speedy Trial Act. Moreover, while the defense points to no authority indicating that a Rule 48(a) motion cannot be motivated by timing considerations, there is authority permitting the use of Rule 48(a) based on timing considerations in the context of a statute of limitations. Namely, in *United States v. B. G. G.*, where the government filed and then moved to dismiss an information based entirely on statute of limitations considerations, the Eleventh Circuit held that the district court abused its discretion when it ordered dismissal with prejudice on that ground. 53 F.4th 1353, 1364–70 (11th Cir. 2022). Here, the use of Rule 48(a) is on even firmer footing because the Speedy Trial Act explicitly anticipates and accounts for such use. *See* 18 U.S.C. § 3161(h)(5); *Barraza-Lopez*, 659 F.3d at 1220 n.5; *Myers*, 666 F.3d at 406.

Moreover, even if the United States had run afoul of the Speedy Trial Act—which it has not—that alone would not justify dismissal with prejudice. Instead, even in the case of a violation of the Speedy Trial Act, dismissal with prejudice would not be the automatic remedy; instead, in deciding whether to dismiss with prejudice, the Court would have to consider "the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a re-prosecution on the administration of [the Act] and on the administration of justice." *United States v. Bowman*, 496 F.3d 685, 689 (D.C. Cir. 2007) (citing 18 U.S.C. § 3162(a)(1)). Here, like in *Bowman*, the offense charged against the Defendant is serious and the public has a right to have it adjudicated;[2] the circumstances of the delay were not a result of bad faith; the anticipated delay will be only approximately three months; and the United States anticipates being able to try this case well within the applicable statute of limitations.

Finally, re-prosecution of the Defendant will not go against the concept of fairness. At its core, the *defens*e proposal violates the concept of fundamental fairness because their proposed remedy—dismissal with prejudice—is "the most severe sanction possible." *United States v. Slough*, 679 F. Supp. 2d 55, 61 (D.D.C. 2010) (quoting *United States v. Isgro*, 974 F.2d 1091, 1097 (9th Cir.1992)). That remedy is not proportional to the alleged harm here. Already, as result of Officer 1's involvement and the United States' late discovery of that involvement, the United States is now compelled to dismiss its case, re-do DNA testing, and, if appropriate, re-present this case to a Grand Jury. Meanwhile, during that time, the Defendant will not have this case pending against him and will be under no conditions of release in this case. And, if the

[2] Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year (18 U.S.C. § 922(g)) carries a maximum period of incarceration of fifteen years, and the Government estimates the Defendant's Sentencing Guidelines at approximately 33–41 months.

government obtains a new indictment following new DNA analysis, the Defendant's case can then be promptly adjudicated. That is a fair resolution of the circumstances here.

**CONCLUSION**

WHEREFORE, for the reasons stated above, the United States respectfully requests that the United States Motion to Dismiss Indictment Without Prejudice (ECF No. 67) be granted.

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

By: /s/ *Emory V. Cole*
Emory V. Cole
PA. Bar No. 49136
Assistant United States Attorney
601 D Street, N.W.
Washington, D.C. 20530
(202) 252-7692
Emory.Cole@usdoj.gov